UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: BP p.l.c. § | MDL No. 10-md-2185 |
| SECURITIES LITIGATION § | |
| § | |
| § | |
| § | |
| NEW YORK CITY EMPLOYEES' § | Civ. Act. No. 4:13-cv-1393 |
| RETIREMENT SYSTEM et al. § | |
| § | |
| v. § | HON. KEITH P. ELLISON |
| § | |
| BP P.L.C. et al. § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Amended Second Tranche Consolidated Motion to Dismiss. (Doc. Nos. 21, 28.)[1] Having reviewed the motion, Plaintiffs' response (Doc. Nos. 39, 45), Defendants' reply (Doc. Nos. 58, 61), all papers in support thereof, and having heard oral argument, the Court finds that Defendants' Amended Motion (Doc. Nos. 21, 28) must be **GRANTED IN PART** and **DENIED IN PART**. The Court hereby incorporates, as relevant, its reasoning articulated in the Memoranda and Orders issued this day in two related cases—*Avalon Holdings, Inc. et al. v. B.P. p.l.c. et al.* [12-cv-3715] (the "*Avalon Holdings* Opinion") and *Mondrian Global Equity Fund, L.P. et al. v. BP p.l.c. et al.* [12-cv-3621] (the "*Mondrian* Opinion"). The Court also separately addresses arguments raised in Defendants' Motion which were not implicated by the allegations and claims in *Avalon Holdings* or *Mondrian*.

I.   SPECIFICS OF THIS ACTION

   A.   The parties

Plaintiffs in *New York City Employees' Retirement System et al. v. BP p.l.c. et al.* are

---

[1] Unless otherwise indicated, all docket references are to 13-cv-1393.

New York City Employees' Retirement System ("NYCERS"); Teachers' Retirement System of the City of New York ("TRS"); New York City Police Pension Fund ("Police"); New York City Fire Department Pension Fund ("Fire"); New York City Board of Education Retirement System ("BERS"); Teachers' Variable Annuity Funds ("TVF"); and New York City Group Trust ("NYCGRP"). (Doc. Nos. 10, 71 ("New York Compl."), at ¶¶ 22-28.) These are all U.S. public pension funds.

The "New York Defendants" or "Defendants" consist of three corporate entities in the BP family of companies—BP p.l.c.; BP America, Inc.; and BP Exploration & Production, Inc.—as well as five individual defendants. BP p.l.c. ("BP" or the "Company") is a U.K. corporation. (New York Compl. ¶ 29.) BP America, Inc. ("BP America") and BP Exploration & Production, Inc. ("BP E&P"), both wholly-owned subsidiaries of BP, are Delaware corporations with their principal places of business in Houston, Texas. (*Id.* ¶¶ 33-34.)

The individual defendants were directors and officers of one or more of the corporate defendants prior to and during the Deepwater Horizon disaster.[2] They are Anthony B. Hayward, executive director from 2003 to November 2010 and Chief Executive Officer at BP from May 2007 to October 2010; Douglas Suttles, Chief Operating Officer for BP E&P from January 2009 to at least January 2011; Andrew Inglis, CEO of BP E&P and an executive director of the Company from February 2007 until October 2010; David Rainey, BP America's Vice President of Exploration for the Gulf of Mexico; H. Lamar McKay, the Chairman and President of BP America since January 2009; and Robert Dudley, executive director of BP since April 2009 and its Group Chief Executive since October 2010 (i.e., Mr. Hayward's successor). (New York

---

[2] The New York Complaint also names Robert Malone as defendant, but he has been dismissed by stipulation of the parties. (Doc. No. 23 ("Conforming Stip."), at 4.)

Compl. ¶¶ 36-38, 40-42.)

### B. The claims

The New York Plaintiffs purchased BP Ordinary Shares on the London Stock Exchange and/or BP American Depository Shares ("ADSs") on the New York Stock Exchange between November 29, 2006 and June 25, 2010. (New York Compl. ¶ 1.) They allege that Defendants made a series of misrepresentations regarding:

> (i) the extent of BP's commitment to a "safety first" approach to oil drilling . . .; (ii) the size of the oil spill that followed the April 20, 2010 explosion on one of BP's Gulf of Mexico . . . oil rigs . . . and BP's ability to contain the spill; and (iii) the extent of BP's likely responsibility for the catastrophe once it occurred.

(*Id*. ¶ 2.) They claim that, following the Deepwater Horizon explosion, the "truth [about BP] slowly emerged," causing BP stock to "plunge[] in value" and costing Plaintiffs "tens of millions of dollars in losses." (*Id*. ¶ 17.)

Only four New York Plaintiffs—NYCERS, Fire, BERS, and TVF (the "Exchange Act Plaintiffs")—assert Section 10(b) and Section 20(a) claims under the Securities Exchange Act of 1934 ("Exchange Act") based on their purchases of BP ADSs. (*Id*. at ¶¶ 522-33.) By comparison, all Plaintiffs assert English common law deceit and negligent misrepresentation claims with respect to their purchases of Ordinary Shares.[3] (*Id*. ¶¶ 534-40, 546-56; Doc. No. 23 ("Conforming Stip."), at 3.)

## II. DEFENDANTS' MOTION TO DISMISS

Defendants raise two arguments for dismissal not pertinent to *Avalon Holdings* or *Mondrian* and therefore not addressed in the respective opinions in those cases. First, Defendants

---

[3] The New York Complaint also asserts a common law aiding and abetting fraud claim and a statutory fraud claim under Texas law, but these claims have been dismissed by stipulation of the parties. (Conforming Stip. at 3.)

argue that the Exchange Act Plaintiffs' federal claims are time-barred. (Doc. Nos. 22, 29 ("Mot."), at 40-42.) Second, Defendants argue that these same plaintiffs have failed to state viable Section 20(a) claims against Mr. Rainey and Mr. Inglis. (*Id*. at 42-43.)

## III. ANALYSIS

### A. The Exchange Act Plaintiffs' federal claims are not time-barred.

Plaintiffs filed this case in the Southern District of New York on April 17, 2013. The last alleged misrepresentation in the Complaint is dated May 24, 2010. Defendants argue that the Exchange Act Plaintiffs' federal claims are time-barred by the 2-year statute of limitations found in 28 U.S.C. § 1658(b)(1) and must be dismissed. (Mot. at 40.)

Plaintiffs suggest that the substance of Defendants' statute of limitations argument cannot be addressed until the parties have had the opportunity to conduct discovery. (Doc. Nos. 39, 45 ("New York Opp."), at 36-37.) But they have not identified any factual issues on which discovery will inform the Court's analysis. Because this is a purely legal issue capable of resolution at the current stage, the Court will address the merits of Defendants' arguments.

#### 1. The statute of limitations was tolled by the filing of the related federal class action.

As described by the Court in the *Mondrian* Opinion, *American Pipe* tolling suspends the applicable statute of limitations as to all putative class members until class certification is denied or until the individual member otherwise ceases to be a member of the class. Plaintiffs point to the Court's December 2013 ruling in the related federal class action (the "Class Action")—in which class certification was denied—as the earliest possible date on which the statute of limitations began running again.[4] (New York Opp. at 45-48.) The Exchange Act claims of PME,

---

[4] In its December 2013 order denying class certification, the Court permitted the class plaintiffs

4

NYCERS, Fire, BERS, and TVF were all filed prior to December 2013. Thus, according to Plaintiffs, they were timely filed. (*Id.*)

Defendants agree that *American Pipe* tolling ended for members of the putative class in December 2013, but claim that the Exchange Act Plaintiffs are not entitled to the benefits of *American Pipe* tolling because they chose not to wait until class certification was denied before filing their lawsuits. (Mot. at 41.) In other words, Defendants contend that unnamed class members must either (1) file their claims within the original statute of limitations or (2) wait until class certification is denied.

The Fifth Circuit has not spoken on this question of whether class members who file individual claims prior to a decision on class certification thereby forfeit tolling under *American Pipe*. The Court has reviewed district court opinions within the Fifth Circuit, as well as circuit and district court cases outside the Fifth Circuit. It is clear that there has long been a split in authority on this issue.

Prior to 2007—as described by Judge Harmon, administering the Enron multi-district litigation—the majority of cases held that tolling was forfeited in such circumstances, including decisions out of: the Sixth Circuit (2005), the First Circuit (1983), the Central District of California (2003), the Southern District of New York[5] (2003), the Eastern District of New York

---

to reurge their motion with additional evidence as to the predominance of common questions on damages. *See In re BP p.l.c. Sec. Litig.*, 2013 WL 6388408, at *18 (S.D. Tex. Dec. 6, 2013). Plaintiffs do not commit themselves to the position that this ruling—and not the Court's subsequent ruling on the class plaintiffs' renewed motion—restarted the limitations period. (Doc. Nos. 39, 45 ("New York Opp."), at 48 & n.42.)

[5] This decision was subsequently overruled by the Second Circuit in *In re WorldCom Securities Litigation*, 496 F.3d 245 (2d Cir. 2007).

(2003), the Northern District of Texas[6] (2000), the Southern District of Indiana (1996), and the Northern District of Illinois (1998). *See In re Enron Corp. Sec., Deriv., & "ERISA" Litig.*, 465 F. Supp. 2d 687, 715-16 (S.D. Tex. 2006). At that time, the minority view was represented in two 2006 district court decisions out of the Western District of Missouri and the District of Colorado. *See id.* at 716. Judge Harmon sided with the majority view. *Id.*

Since Judge Harmon's decision in *Enron*, the Second Circuit has sided with the so-called "minority" view. In a well-reasoned 2007 decision, the Second Circuit held that the *American Pipe* doctrine should be accepted at "face value"—i.e., that the statute of limitations is tolled for all putative class members until such time as they are no longer members of the putative class. *See In re WorldCom Sec. Litig.*, 496 F.3d 245, 255 (2d Cir. 2007). This event can be accomplished by some act of the court, such as when class certification is denied. *Id.* But it can equally be accomplished by the class member filing its own lawsuit, thereby opting out of the putative class, even if this event predates the court's decision on class certification. *Id.* The Second Circuit disagreed that *American Pipe* compelled a different result. "The *American Pipe* tolling doctrine was created to protect class members from being *forced* to file individual suits in order to preserve their claims. It was not meant to induce class members to forgo their right to sue individually." *Id.* at 256 (emphasis original).

Even if the position adopted by the Second Circuit in *WorldCom* still constitutes a "minority" view—as Defendants claim—it clearly has momentum. In 2008, both the Ninth and Tenth Circuits embraced the Second Circuit's position. *See State Farm Mut. Auto. Ins. Co. v.*

---

[6] In its analysis of the issue, the Northern District of Texas cited approvingly to a 1978 D.C. district court decision—a case not included in Judge Harmon's accounting. *See Rahr v. Grant Thornton LLP*, 142 F. Supp. 2d 793, 800 (N.D. Tex. 2000) (citing *Wachovia Bank and Trust Co., N.A. v. Nat'l Student Mktg. Corp.*, 461 F. Supp. 999 (D.D.C.1978)).

*Boellstorff*, 540 F.3d 1223, 1228-35 (10th Cir. 2008); *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008). Five district courts outside those circuits have been similarly persuaded—including the Eastern District of Louisiana. *See Howard v. Gutierrez*, 571 F. Supp. 2d 145, 156 (D.D.C. 2008); *In re Processed Egg Prods. Antitrust Litig.,* 2012 WL 6645533, at *7-8 (E.D. Pa. Dec. 20, 2012); *McDavitt v. Powell*, 2012 WL 959376, at *2-3 (M.D. Pa. March 21, 2012); *Mason v. Long Beach Mortgage Co.*, 2008 WL 4951228, at *2 (N.D. Ill. Nov. 18, 2008); *In re Katrina Canal Breaches Consol. Litig.*, 2008 WL 2692674, at *2-4 (E.D. La. July 2, 2008) (adopting the reasoning of *WorldCom* as "persuasive," and rejecting the alternative as "illogical"). No court opinion issued after *WorldCom* has disagreed with its reasoning or its conclusion.

The Court joins this trend and adopts the persuasive reasoning set forth in *WorldCom* and the Tenth Circuit's *State Farm* decision. Because the Exchange Act Plaintiffs filed their federal claims while the statute of limitations was tolled under *American Pipe*, those claims are not time-barred.

### 2. The statute of repose was also tolled.

Alternatively, Defendants contend that the five-year period of repose found in 28 U.S.C. § 1658(b)(2) is not subject to *American Pipe* tolling. For the Exchange Act Plaintiffs involved in this case, this argument—if correct—would bar any federal claim based on a statement made before April 17, 2008. (Mot. at 41-42.) Plaintiffs disagree that the statute of repose is not subject to *American Pipe* tolling. (New York Opp. at 48-49.)

Case law supports both positions. The first question to be addressed is whether *American Pipe* tolling is properly considered "legal"—i.e., divined from Rule 23—or "equitable"—i.e., judge made. *See Police and Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95,

7

108 (2d Cir. 2013). If *American Pipe* is an equitable tolling rule, it would not apply to the statute of repose—as Plaintiffs concede. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991). Only a minority of courts has viewed *American Pipe* tolling as judge-made and has refused to apply it to statutes of repose on that basis. *See Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618, 625-26 (S.D.N.Y. 2011) (collecting cases and adopting minority view).

The majority view is that *American Pipe* tolling is legal. *See Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 535-36 (9th Cir. 2011) (collecting cases); *see also In re Enron Corp. Sec., Deriv., & "ERISA" Litig.*, 529 F. Supp. 2d 644, 707-08 (S.D. Tex. 2006). But even if *American Pipe* tolling is legal rather than equitable, its application to statutes of repose is still unsettled.

Historically, most courts found the equitable/legal distinction to be dispositive of the issue—including Judge Harmon in the Enron MDL. *See In re Enron*, 465 F. Supp. 2d at 717 (collecting cases); *see also Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1166 (C.D. Cal. 2010). The position adopted by these courts is best exemplified by a 2000 decision out of the Tenth Circuit. In that case, the Tenth Circuit reasoned that *American Pipe* tolling does not violate the policy behind statutes of limitations and repose because it is not really a "tolling" doctrine at all. Instead, *American Pipe* tolling treats a putative class action as a "pre-filing" of all covered individual claims within the limitations and repose periods. Thus, when an unnamed, putative class member later files its own individual claim, it is not instituting a new action subject to the statute of limitations and statute of repose; it is simply taking over the prosecution of its individual claim from the putative class representative. *See Joseph v. Wiles*, 223 F.3d 1155, 1167-68 (10th Cir. 2000). Many district courts outside the Tenth Circuit—lacking direct guidance from their own circuit courts—have adopted the reasoning and

conclusion of *Joseph*. *See, e.g., Hrdina v. World Sav. Bank, FSB*, 2012 WL 294447, at *3-4 (N.D. Cal. Jan. 31, 2012).

In 2013, however, the Second Circuit created a split when it disagreed that legal tolling based on a rule of civil procedure—i.e., Rule 23—could ever abridge a substantive, statutory right such as a statute of repose.  *See IndyMac*, 721 F.3d at 109. The Second Circuit grounded its decision in the Rules Enabling Act, *id.*, and has reaffirmed its holding in subsequent opinions, *see Freidus v. ING Groep, N.V.*, 543 Fed. App'x 92, 93 (2d Cir. 2013); *Caldwell v. Berlind*, 543 Fed. App'x 37, 39-40 (2d Cir. 2013).

The Fifth Circuit has not yet weighed in on the split between the Second and Tenth Circuit on this issue. *See Hall v. Variable Annuity Life Ins. Co.*, 727 F.3d 372, 375 n.5 (5th Cir. 2013) (acknowledging *Joseph* and *IndyMac*, but "decid[ing] the case on other grounds"). This Court, however, is persuaded by the Tenth Circuit's conceptualization of the *American Pipe* tolling doctrine. Viewing the filing of a class action as a "prefiling" of all unnamed class members' claims means that the concern identified by the Second Circuit in *IndyMac*—that applying *American Pipe* tolling somehow abridges a defendant's substantive right to be free from suit after a specific period of time—is illusory. So long as the defendant has fair notice of the type and number of claims that could be asserted against it, which should be required for *American Pipe* tolling in the first instance, then there is no unfair surprise when a class member assumes responsibility for its own individual claim during the course of the class action, or after class status has been denied.

### B. The Exchange Act Plaintiffs have failed to state viable Section 20(a) claims against Mr. Rainey and Mr. Inglis.

Taking into account the parties' Conforming Stipulation and the rulings announced

above, Mr. Rainey and Mr. Inglis are not alleged to have made any misrepresentation in violation of Section 10(b) of the Exchange Act. Pursuant to Section 20(a), however, Plaintiffs attempt to hold these defendants secondarily liable for the alleged Section 10(b) violations of Mr. Hayward, Mr. Suttles, Mr. McKay, Mr. Dudley, and/or the relevant corporate Defendants.

Section 20(a) provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). Although Congress did not define what it means to "control" another, regulations promulgated by the Securities and Exchange Commission state that control "means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405. Defendants argue that Plaintiffs have not stated viable Section 20(a) claims against Mr. Rainey or Mr. Inglis. (Mot. at 42-43.)

In the Class Action, the Court dismissed Section 20(a) claims against Mr. Rainey and Mr. Inglis due to plaintiffs' failure to allege sufficient facts for control person liability. *See In re BP p.l.c. Sec. Litig.*, 922 F. Supp. 2d 600, 639-40 (S.D. Tex. 2013) (dismissing Section 20(a) claims against Mr. Inglis); *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 791-92 (S.D. Tex. 2012) (dismissing Section 20(a) claims asserted against, *inter alia*, Mr. Rainey and Mr. Inglis). As to Mr. Inglis, Plaintiffs offer no new allegations.[7] The Court therefore concludes, once again, that

---

[7] Plaintiffs aver to "[Mr.] Inglis's key role played in meetings with investment managers" as support for their Section 20(a) claims against him. (New York Opp. at 60.) Mr. Inglis is not

10

the allegations are insufficient to show that Mr. Inglis possessed or exercised *control* over those defendants alleged to have made actionable misrepresentations.

Plaintiffs' new allegations regarding Mr. Rainey are significantly more extensive and detailed than those offered for Mr. Inglis. The allegations—drawn from a Department of Justice criminal information filed against BP E&P, to which BP E&P has agreed to plead guilty—suggest that Mr. Rainey played a principal role in "reverse engineering" a 5,000 barrels-of-oil-per-day ("BOPD") estimate for the spill rate, which he then provided to Congress as a bona fide estimate. (New York Compl. ¶ 226.) These allegations, if true, support the inference that Mr. Rainey misled Congress.[8] But they do not establish that Mr. Rainey possessed or exercised control over Mr. Suttles, Mr. Hayward, Mr. McKay, Mr. Dudley, or the corporate defendants responsible for the *public* spill rate misstatements in this case.

Plaintiffs emphasize that Mr. Rainey was the "***person who invented the false 5,000 [BOPD] flow rate*** used by all other Defendants to defraud investors." (New York Opp. at 60.) They provide no legal authority, however, for holding Mr. Rainey liable under Section 20(a) as a result. As the Court understands the scope of control person liability, the question is whether Mr. Rainey possessed or exercised control over those persons or entities who made actionable misstatements under Section 10(b), not whether the substance of the alleged falsehoods

---

alleged to have attended any meetings with the New York Plaintiffs' investment managers. He is alleged to have attended a single meeting with the investment manager for another second tranche plaintiff, in which he purportedly spoke about BP's production efforts in the Gulf of Mexico, but failed to disclose various risks and deficiencies within BP's organization. (Doc. Nos. 20, 22 [12-cv-2362], at ¶ 452.) Even if these allegations were included in the New York Complaint—they are not—they are insufficient to support the claim that Mr. Inglis played a "key role" in BP's interface with investment managers, much less that this "key role" extended to control over the individuals and corporate defendants accused of making public misrepresentations before and after the Deepwater Horizon explosion.

[8] Mr. Rainey disputes the allegations against him. (Doc. No. 59, at 3 n.3.)

originated with him. In the absence of relevant authority, the Court must agree with Defendants that Plaintiffs' new allegations are insufficient to hold Mr. Rainey liable as a control person.

## IV. CONCLUSION

For the foregoing reasons, and pursuant to the reasoning articulated in the *Avalon Holdings* Opinion and *Mondrian* Opinion, the Court **GRANTS** the Motion to Dismiss as to the following claims:

- All claims based on Mr. Inglis's statements made in the 2008 Strategy Presentation on February 27, 2008. (New York Compl. ¶ 354(b).)

- All claims based on statements made in the May 20, 2010 press release and Form 6-K. (*Id.* ¶ 436.)

- All claims based on statements made in the May 24, 2010 press release and Form 6-K. (*Id.* ¶ 443.)

- All Section 20(a) claims asserted against Mr. Inglis and Mr. Rainey.

There being no remaining claims against Mr. Rainey, he is **DISMISSED**.

In all other respects, the Motion is **DENIED.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the thirtieth day of September, 2014.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE