United States District Court
Southern District of Texas
**ENTERED**
July 08, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| *In re: BP p.l.c. Securities Litigation* | MDL No.   4:10-MD-2185 |
| **This document relates to:** | |
| *Alameda Cnty. Emps.' Ret. Assoc. et al. v. BP p.l.c. et al.* | No. 4:12-cv-1256 (cons.) |
| *South Yorkshire Pensions Auth. et al. v. BP p.l.c. et al.* | No. 4:12-cv-2362 (cons.) |
| *Mondrian Global Equity Fund, L.P. et al. v. BP p.l.c. et al.* | No. 4:12-cv-3621 |
| *Stichting Pensioenfonds Metaal en Techniek et al. v. BP p.l.c. et al.* | No. 4:13-cv-0069 |
| *HESTA Super Fund v. BP p.l.c. et al.* | No. 4:13-cv-0129 |
| *N.Y.C. Emps.' Ret. Sys. et al. v. BP p.l.c. et al.* | No. 4:13-cv-1393 |
| *Nova Scotia Health Employees' Pension Plan v. BP p.l.c., et al.* | No. 4:13-cv-3397 |

## MEMORANDUM AND ORDER

Before the Court is the Motion for Leave to File Amended Complaints filed by the plaintiffs in the above-captioned actions. The factual background of the respective cases has been set forth previously and will not be repeated here.

1

I.     **<u>PROCEDURAL HISTORY</u>**

Since April 20, 2010, BP shareholders have filed more than three dozen law suits alleging that BP made fraudulent representations to investors regarding both the safety of the Deepwater Horizon oil rig and the severity of the oil spill that resulted from its collapse.  In the interest of judicial efficiency, the parties and the Court have grouped these cases into different "tranches" and, when possible, collectively addressed each tranche with consolidated motions and briefing.

The Tranche 1 Plaintiffs[1] filed suit in 2012 asserting claims for relief under federal securities statutes, state securities statutes, and the common law of several states.  After seeking an extension of time to respond to those claims, Defendants filed a consolidated motion to dismiss the Tranche 1 complaints on December 21, 2012 (the "First Motion to Dismiss").  (*See* Mot. to Dismiss, *Alameda*, Doc. Nos. 46-50.)  The briefing process was protracted due to the breadth and complexity of the issues, and the final supplemental brief was not filed until June 14, 2013.

In the meantime, additional plaintiffs continued filing securities fraud claims, and BP moved to dismiss those claims in a separate consolidated motion to dismiss ("Second Motion to Dismiss") on May 20, 2013.  (*See, e.g.*, Mot. to Dismiss, *South Yorkshire Pensions Auth. et al. v. BP p.l.c. et al.* (No. 12-cv-2362) (hereinafter "*South Yorkshire*"), Doc. Nos. 27-31, 39.)  The arguments raised in the Second Motion to Dismiss overlapped considerably with those raised in the First Motion to Dismiss: Defendants contended that English law governs Plaintiffs' claims,

---

[1] The "Tranche 1 Plaintiffs" include the plaintiffs in *Alameda Cnty. Emps.' Ret. Assoc. et al. v. BP p.l.c. et al.* (No. 12-cv-1256) (hereinafter "*Alameda*") and *Connecticut Retirement Plans and Trust Funds, et al. v. BP p.l.c. et al.* (No. 12-cv-1272).  For the sake of convenience, the Court will cite only to the *Alameda* docket when referencing Tranche 1 filings.

The case of *Ohio Public Employees Retirement System et al. v. BP p.l.c.* has been grouped in Tranche 1 in previous motions, but the plaintiffs in that case have not joined the other Tranche 1 plaintiffs in moving to amend their complaint.

Plaintiffs failed to state a claim under English law, and the doctrine of *forum non conveniens* mandated dismissal in deference to the English courts. (*Compare, e.g.*, Mot. to Dismiss, *Alameda*, Doc. No. 48 *with* Mot. to Dismiss, *South Yorkshire*, Doc. No. 28.) In the interest of judicial economy, the Court halted briefing on the Second Motion to Dismiss in hopes that resolution of the First Motion to Dismiss would be of assistance to the parties as they completed briefing the Second Motion. (*See* Order, *South Yorkshire*, Doc. No. 41 (hereinafter, the "Halt Briefing Order").) On September 25th, the Court entered an order denying in part the First Motion to Dismiss.[2] (Order, *Alameda*, Doc. No. 88, 91 (hereinafter, the "Tranche 1 Order").) In short, the Court ruled that English law governed the Tranche 1 Plaintiffs' claims, but also held that the Tranche 1 Plaintiffs had adequately alleged claims for relief under English law. (*Id.*)

Because the issues raised in the Second Motion to Dismiss were similar to those raised in the First, Defendants and the Tranche 2 Plaintiffs sought to avoid duplicative briefing by agreeing upon how the Tranche 1 Order might apply to the Tranche 2 Plaintiffs' complaints.[3] After extensive negotiations, the parties memorialized their agreement in the form of a joint stipulation and filed it with the Court. (See Stipulation and Order, *South Yorkshire*, Doc. Nos. 51, 55 (hereinafter, the "First Conforming Stipulation").) The First Conforming Stipulation acknowledged that "the Court will most likely deem the [Tranche 1 Order] to be applicable to the [Tranche 2 Plaintiffs' complaints]," and therefore stipulated that (i) English law applies to all of

---

[2] Defendants moved for reconsideration, which the court granted. The Court entered a revised Tranche 1 Order on December 5, 2013.

[3] The "Tranche 2 Plaintiffs" include the plaintiffs in the following actions: the *Avalon Holdings* action (No. 4:12-cv-3715); the *South Yorkshire* action (No. 4:12-cv-2362); the *Mondrian* action (No. 4:12-cv-3621); the *Houston Municipal* action (No. 4:12-cv-3714); the *Stichting* action (No. 4:13-cv-0069); the *HESTA* action (No. 4:13-cv-0129); the *KBC Asset Management* action (No. 4:13-cv-0517); the *Deutsche Asset Management* action (No. 4:13-cv-0887); the *New York City* action (No. 4:13-cv-1393); and the *Nova Scotia* action (No. 4:13-cv-3397).

the Tranche 2 Plaintiffs' claims (except for their federal Exchange Act claims), and (ii) subject to Court approval—which the Court granted on December 10, 2013—certain claims enumerated in the First Conforming Stipulation would be dismissed. (*See* First Conforming Stipulation, 3.) In effect, the First Conforming Stipulation served as a de facto amendment that narrowed the breadth of the Tranche 2 Plaintiffs' complaints, thereby narrowing the issues that the parties would need to address in the Second Motion to Dismiss.

Defendants filed a revised Second Motion to Dismiss on December 11, 2013. (Mot. to Dismiss, *South Yorkshire*, Doc. Nos. 53-54, 59-60.) But rather than narrow the scope of their motion, Defendants expanded it. For example, Defendants additionally argued that the Tranche 2 Plaintiffs were barred from bringing their claims under English law because, as evidenced by their coordinated negotiation of the First Conforming Stipulation, the Tranche 2 Plaintiffs' claims were proceeding as a "single action," which is barred by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). (*Id.* at 10-18.) This not only introduced a novel issue for the parties to brief, but it forced the Tranche 2 Plaintiffs to avoid coordinating their litigation on any level, lest they be subject to further scrutiny under SLUSA.

Briefing was not completed until the summer of 2014, and the Court issued its "Tranche 2 Orders" on September 30, 2014, holding that the Tranche 2 Plaintiffs' claims could proceed. The Court rejected Defendants' SLUSA argument (*see* Mem. and Order, No. 4:12-cv-3715, Doc. No. 93 (the "Tranche 2 Order")), meaning that Plaintiffs could coordinate among themselves without risking dismissal. Once able to coordinate, the plaintiffs in Tranches 1, 2, and 3[4] engaged in joint consultation with an English law expert to understand how the application of

---

[4] The "Tranche 3" actions include each of the fifteen actions filed against BP in this MDL in 2014.

4

English law would affect their cases, and they continued fact development efforts to that end. (Reply at 5.)

On August 31, 2014, each of the Tranche 3 Plaintiffs filed amended complaints as of right, asserting securities fraud claims under English law. Shortly thereafter, the Tranche 1 and 2 Plaintiffs filed motions for leave to amend their complaints, attaching proposed amended complaints to the motions. According to the Tranche 1, 2, and 3 Plaintiffs, the revised complaints display significant uniformity in their claims and allegations, contain better-developed facts, and display better-constructed claims thanks to the counsel of an English law expert. (Reply at 6.) Defendants indicated that they would consider allowing the motion to proceed unopposed, but first needed to review the proposed amendments. About three months later, Defendants provided the Tranche 1 and 2 Plaintiffs with a list of objections, and the parties entered into intensive negotiations in an attempt to resolve their disputes.

One subset of the Tranche 1 and 2 Plaintiffs (the "Non-Pomerantz Plaintiffs") reached an accord with Defendants: Defendants would allow the Non-Pomerantz Plaintiffs' motions to proceed unopposed if the Non-Pomerantz Plaintiffs would stipulate to the effect of the Tranche 2 Order.[5] Those parties entered into an additional "conforming" stipulation (*see* Order, No. 4:10-md-2185, Doc. No. 1287 (hereinafter, the "Second Conforming Stipulation")), and the Court granted the Non-Pomerantz Plaintiffs' motions for leave to amend. The Non-Pomerantz Plaintiffs filed their amended complaints shortly thereafter.

---

[5] Each of the Tranche 1 and 2 Plaintiffs bringing this motion is represented by Pomerantz LLP. The Tranche 1 and 2 Plaintiffs who entered into the Second Conforming Stipulation—and, by its effect, are no longer joining in this motion—are represented by other counsel.

The remaining Tranche 1 and 2 Plaintiffs (the "Plaintiffs") and Defendants were able to whittle down their list of disputed amendments, but were unable to reach total accord. One source of contention remains. Defendants argue that the Tranche 1 Order and the First Conforming Stipulation provided for the dismissal of the Tranche 1 and 2 Plaintiffs' "holder claims," and that Plaintiffs should not be allowed to reassert those claims here. In response, Plaintiffs note that the Tranche 1 Order—and, by extension, the First Conforming Stipulation—merely dismissed the *state law* holder claims *as then pled*, but did not prohibit the Plaintiffs from re-pleading English law holder claims based on newly-discovered facts.

After it became clear that the parties had reached an impasse on this one remaining issue, Defendants filed their opposition to Plaintiffs' motion for leave.

## II. <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 15(a), a district court "should freely give leave [to amend] when justice so requires."[6] Fed. R. Civ. P. 15(a)(2). The language of this rule evinces a "bias" or "presumption" in favor of granting leave to amend. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005); *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004). Thus, although leave to amend should not be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend[.]" *Id.* (internal quotation marks omitted). For example, "[d]enial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010). "Courts may

---

[6] Plaintiffs correctly note that, "As the deadline to file a motion seeking leave to amend set in the Court's December 10, 2013 CMO has not yet passed, Fed. R. Civ. P. 16(b), which governs modifications to pretrial scheduling orders, is not applicable." Defendants do not dispute that this issue is properly analyzed under Rule 15.

6

also consider judicial efficiency and effective case management before granting a motion to amend." *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 322 (5th Cir. 2009) (internal citations omitted).

### III. DISCUSSION

Defendants oppose Plaintiffs' motion for leave on three grounds: that (1) Plaintiffs unduly delayed amending their complaints; (2) allowing amendment would result in undue prejudice to Defendants; and (3) allowing amendment would result in judicial inefficiency. Given the procedural history at issue here, however, none of these grounds constitutes a "substantial reason" that can overcome Rule 15's "bias in favor of granting leave to amend." *See Jones*, 427 F.3d at 994.

#### A. Undue Delay

In ruling on a motion to amend a pleading, a court may consider "(1) an 'unexplained delay' following an original complaint, and (2) whether the facts underlying the amended complaint were known to the party when the original complaint was filed." *Matter of Southmark Corp.*, 88 F.3d 311, 316 (5th Cir. 1996). Defendants argue that both of these factors weigh heavily against granting leave here. (Opp. at 7.) The Court disagrees.

Defendants support the first factor by noting that two to three years have passed since the Plaintiffs filed their operative complaints. But delay by itself, even if substantial, does not necessarily provide the Court with an adequate basis for denying a motion for leave to amend—the "delay must be undue." *Mayeaux*, 376 F.3d 420, 427 (5th Cir. 2004). And here, unlike in the precedent cited by Defendants, Plaintiffs' delay in amending their complaints is explainable. Indeed, much of the delay is attributable to factors outside of Plaintiffs' control. For example, it was the Court who halted briefing pending resolution of the First Motion to Dismiss; it was

7

Defendants who expanded the scope of their Second Motion to Dismiss by adding a SLUSA argument (effectively barring a coordinated, more efficient response from the Plaintiffs); and it is Defendants who have requested numerous extensions of time to respond throughout this litigation.[7]

When Plaintiffs were presented with a reasonable opportunity to amend their complaints, they did so. Following resolution of the Second Motion to Dismiss, the Plaintiffs: (i) engaged an English law expert to advise them on amending their complaints in light of English securities laws—a body of law which the operative complaints were not drafted to address, and with which Plaintiffs' counsel likely had little familiarity; (ii) further investigated the work of their outside investment managers; and (iii) coordinated their efforts to draft amended complaints that are relatively uniform across all three tranches. The fact that it took the Plaintiffs almost a year to draft these amended complaints is not evidence of undue delay, but rather of an arduous process that necessarily required a substantial amount of time to complete.

Defendants have pointed to only one specific example of "unexplainable delay," faulting the Plaintiffs for failing to amend their complaints following the Tranche 1 Order.[8] But, as Plaintiffs correctly respond, their decision to refrain from amending was reasonable. The

---

[7] This not to suggest, however, that Defendants' SLUSA argument or requests for extensions of time were dilatory or unreasonable. To the contrary, Defendants' (and Plaintiffs') efforts to resolve these matters expeditiously have been commendable—which is precisely the point. Litigating highly complex MDLs is a remarkably time-intensive process, even when both parties are acting diligently and in good faith. The fact that Plaintiffs were only recently able to amend their complaints is certainly lamentable as a general matter, but it is far from "unexplainable."

[8] (Opp. at 9 (citing *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 644 (5th Cir. 2007)).) *But see U.S. Commodity Futures Trading Comm'n v. Fin. Robotics, Inc.*, 2013 WL 3280038, at *2 (S.D. Tex. June 27, 2013) (noting that, while "[a] litigant's failure to assert a claim as soon as he could have is properly a factor to be considered," the mere fact that "a claim was not presented as promptly as possible, however, does not vest the district court with authority to punish the litigant").

Court's Halt Briefing Order had laid out a schedule that was exclusively focused on expeditiously resolving Defendants' voluminous Tranche 2 motion to dismiss. (*See* Halt Briefing Order, 2.) The order made no mention of amending any of the Tranche 1 and 2 Plaintiffs' complaints. Indeed, it would have made little sense for the Tranche 2 Plaintiffs to amend their complaints in the face of Defendants' imminent motion to dismiss. Consequently, Plaintiffs' decision to refrain from amending their complaints at that time was not only explainable—it was reasonable.

Additionally, Defendants' argument that Plaintiffs' amendments are not based on newly discovered facts misses the mark. According to Defendants, the new allegations in the amended complaints relate to Plaintiffs' "own beliefs and actions [as well as] those of their investment managers," meaning that all of the newly-alleged facts would have been within Plaintiffs' knowledge when they filed their initial complaints. (Opp. at 10.) Plaintiffs respond, however, that many of the investment managers were not retained by Plaintiffs in recent years, and the newly-alleged facts are the product of Plaintiffs' ongoing attempts to secure evidence from those third parties. (Reply at 12.) For example, the New York City Plaintiffs' initial complaint included reliance allegations drawn from only two investment managers. Their proposed amended complaint, on the other hand, sets forth enhanced allegations regarding those two investment managers, as well as new allegations regarding an additional five investment management firms. (*Compare* No. 4:13-cv-1393, Doc. Nos. 3, 10, at ¶¶ 493-511 *with* 4:13-cv-1393, Doc. Nos. 88, 92, at ¶¶ 545-607.)

### B. Undue Prejudice

"Denial of leave to amend may be required when allowing an amendment would cause undue prejudice to the opposing party." *Underwriters at Interest on Cover Note*

9

*JHB92M10582079 v. Nautronix, Ltd.*, 79 F.3d 480, 484 (5th Cir. 1996). "Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment." *U.S. Commodity Futures Trading Comm'n v. Fin. Robotics, Inc.*, 2013 WL 3280038, at *3 (S.D. Tex. June 27, 2013) (quoting *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006)).

Defendants argue that they would be unduly prejudiced because they have already gone through the expense of moving to dismiss and answering the Plaintiffs' original complaints; allowing those plaintiffs to amend their complaints would require Defendants to repeat the process. (Opp. at 11-12 (citing *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 2007 WL 207028, at *4 (S.D. Tex. Jan. 23, 2007).) But this position fails to account for the unconventional procedural backdrop of this MDL. Defendants have already indicated that they plan to file a consolidated motion to dismiss the complaints of the Tranche 3 Plaintiffs— complaints which are very similar to the proposed amended complaints filed by the Tranche 1 and 2 Plaintiffs. For example, the amended complaints in Tranche 3 contain the same newly-added English law "holder claims" as Plaintiffs' proposed amended complaints. Indeed, the holder claims in some of the complaints include the same factual allegations drawn from the same set of investment managers.[9] In other words, Defendants are going to respond to the same "holder claims" in the Tranche 3 complaints regardless of whether the Court grants the Plaintiffs'

---

[9] Defendants correctly argue in a footnote that some of the specific factual allegations underpinning the Tranche 3 Plaintiffs' reliance arguments differ from those in the Tranche 1 and 2 Plaintiffs' complaints to some degree. (*See* Opp. at 13 n. 10.) But, while true that this may require Defendants to address slightly varied sets of factual allegations, Defendants have not shown that these variances are sufficient to justify departing from the presumption in favor of granting parties leave to amend. *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004); *see also Fin. Robotics*, 2013 WL 3280038, at *3 ("The party opposing amendment has the burden of proving prejudice."). Put differently, even assuming that granting Plaintiffs' motion would prejudice Defendants to some degree, Defendants have not shown that such prejudice is necessarily "substantial" or "undue." *Id.*

motion for leave to amend. As a result, granting the motion would not result in undue prejudice to the Defendants. *See Fin. Robotics*, 2013 WL 3280038, at *3 (finding a lack of undue prejudice where "[s]ome of the issues raised by the proposed amendments overlap with those already present in this litigation" and the issues were "likely to be a central and disputed issue in [the] litigation regardless of whether the CFTC's motion is granted").

### C. Judicial Economy

Finally, Defendants argue that Plaintiffs' proposed amendments would require the Court and the parties to "scrap" the First Conforming Stipulation and begin a new round of motion practice, resulting in judicial inefficiency. But this argument again neglects the broader context in which it is made. After the Tranche 1 and 2 Plaintiffs filed their motions for leave to amend, the parties spent months negotiating a Second Conforming Stipulation that not only stipulates to the effect of the Court's Tranche 1 Order (as did the First Conforming Stipulation), but further stipulates to the effect of the Court's Tranche 2 Orders. The Non-Pomerantz Plaintiffs entered into the Second Conforming Stipulation, and the Plaintiffs have represented that they will enter into almost identical stipulations if their motion for leave is granted.[10] (Reply at 14.) Thus, Plaintiffs are not seeking to disregard the First Conforming Stipulation. To the contrary, they have agreed to expand on it by stipulating to the effects of the Tranche 2 Order.

---

[10] The lone difference would be that the Plaintiffs would not stipulate to the dismissal of their recently-strengthened English law holder claims. But even this would not require the Court to re-consider issues that have already been decided. As Plaintiffs correctly argue, the Tranche 1 Order specifically noted that the Tranche 1 Plaintiffs' allegations of "reliance [are], *at present*, insufficiently pled under Rule 9(b)." (Reply at 9 (citing Revised *Alameda* Order, No. 4:10-md-2185, Doc. No. 706, at 67).) In other words, the text of the opinion implicitly contemplates the prospect of the Plaintiffs adding additional allegations in the future, which is precisely what Plaintiffs are seeking to do here.

## IV. CONCLUSION

After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court holds that Plaintiffs' Motion for Leave to File Amended Complaints is **GRANTED** in its entirety.

**IT IS SO ORDERED**.

Signed this 8th day of July 2016.

                                          Hon. Keith P. Ellison
                                          United States District Judge